IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19-cv-01133 |
| | ) | |
| v. | ) | Judge Colin Sterling Bruce |
| | ) | Magistrate Judge Eric I. Long |
| JOHN BALDWIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### IDOC DEFENDANTS' RESPONSE
### TO PLAINTIFF'S MEMORANDUM REGARDING ESI PROTOCOL

Defendants, John Baldwin, Jeff Sims, Shane Reister, Melvin Hinton, Sylvia Butler, and Jamie Chess (the "IDOC Defendants") by and through their attorney, Kwame Raoul, Illinois Attorney General, pursuant to the Court's December 6, 2019, Minute Entry and Federal Rule of Civil Procedure 16, hereby respond to Plaintiff's Memorandum Regarding ESI Protocol. In support thereof, Defendants state the following:

#### INTRODUCTION

This matter concerns a single plaintiff's claims against Defendants for purported violations of the Eighth Amendment, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Fourteenth Amendment's due process clause. [Dkt. 1. at ¶¶ 1-5.] As such, Plaintiff's requested relief only includes monetary damages to which only he will be entitled. [*Id.* at Section V. Relief Requested.] Put differently, this is a case which will only affect the individual parties and have no

social consequences. With these considerations in mind, IDOC Defendants turn to the relevant history of the parties' discussions regarding ESI.

On November 15, 2019, after several meet-and-confers, the parties filed their joint report regarding submission of an ESI plan. [*See* Dkt. 56.] While many issues were agreed upon, there were a number of disputes. The parties detailed these disputes in Dkt. 56-2, which redlined the parties' disagreements. During a hearing on December 6, 2019, the Court resolved some of the remaining disputes, and the parties were able to come to additional resolutions during a subsequent meet-and-confer. Relating to the IDOC Defendants, a concession was made in which the IDOC Defendants agreed to Plaintiff's proposed time-frame of December 21, 1994 to present in regards to Section I in Exhibit B. [*See* Dkt. 56-2 at Ex. B.I.] IDOC Defendants previously only agreed to search back as far as July 1, 2015.

As to the points with which there is still disagreement, IDOC Defendants are at issue with the following:

- Plaintiff's proposed search terms. [*Id.* at Ex. B.II.]
    - IDOC Defendants have proposed to search for Plaintiff's name and inmate number.

- Plaintiff's proposed custodians. [*Id.* at Ex. A.II.]
    - IDOC Defendants have agreed to fourteen different custodians which consist of all Defendants as well as a number of non-party high ranking administrators.

- Plaintiff's proposed data repositories. [*Id.* 56-2 Ex. A.I.]
    - The IDOC Defendants have agreed to search data repositories within the Illinois Department of Corrections.

Explained in more detail below, Plaintiff's proposals are overly broad, unduly burdensome, seek information not relevant to any claim or defense asserted in the

present litigation, and are not proportional to the needs of this case pursuant to Rule 26. Indeed, Plaintiff's proposals are a veiled attempt to expand the scope of discovery in order to obtain information with no relevance to the instant matter.

## APPLICABLE STANDARDS

Federal Courts have broad discretion in matters relating to discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Rule 26(b)(1) provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). However, the Rules "preclude proponents of discovery from wielding the discovery process as a club by propounding requests compelling the recipient to assume an excessive burden." *See United States v. District Council of New York City*, 1992 WL 208284 at *15 (S.D.N.Y. Aug. 19, 1992); *See also Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000). Indeed, the Supreme Court has cautioned that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense….' Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando,* 441 U.S. 153, 177 (1979). With this in mind, on December 1, 2015, Rule 26(b)(1) was amended to eliminate the court's discretion to expand discovery to the subject matter of the action, requiring that discovery be "'proportional' to various

3

factors." *Polyone Corp. v. Lu*, No. 14 C 10369, 2015 WL 9489915, at *2 (N.D. Ill. Dec. 30, 2015).

In determining scope, courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs it likely benefit." *Patterson*, 281 F.3d at 681. The court must limit discovery if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C).

## ARGUMENT

Before discussing the IDOC Defendants' specific objections, it is worth noting that Plaintiff's proposal includes an almost 11 year timespan, 26 different custodians, and 73 different generic search terms. In an effort to provide the Court with some indication of how burdensome and overly broad Plaintiff's proposal is, the IDOC Defendants performed a search using Plaintiff's proposed time-frame and all of Plaintiff's proposed search terms for only two custodians: William Puga and Michael Dempsey. This search resulted in 51,379 emails, not including attachments. A search of all of Plaintiff's proposed custodians and search terms would easily result in

4

hundreds of thousands of responsive emails, excluding attachments and ESI contained on custodian servers. The sheer volume of Plaintiff's request as well and the responsive hits clearly indicate that Plaintiff's proposal is overly broad, unduly burdensome, seeks irrelevant information, and is not proportional to the needs of this case. In fact, Plaintiff admits this when he states that, "[u]ndoubtedly, some of Plaintiff's proposed terms will return and overlarge – and useless – number of documents." [*See* Dkt. 60 at p. 4.]

Additionally, Plaintiff contends that he alleges systemic failures based on upper-level policy acts or omissions and admits that Defendants are indeed policymakers. [*Id.* at p. 2.] Plaintiff further admits that Defendants are in the best position to identify what search terms and custodians will lead to the gathering of responsive documents. [*Id.* at p. 3, 6.] However, Plaintiff then scoffs at Defendants' proposals[1] claiming that using those same policymaker defendants as custodians, as well as well as five additional policymaking administrators is insufficient. Plaintiff further argues that the search terms Defendants have offered are lacking. Plaintiff's position is perplexing to say the least. Plaintiff cannot have it both ways.

Finally, Plaintiff argues that the ESI Protocol is not a discovery request and therefore, the overbreadth of his proposal should not pose any issues for Defendants. Plaintiff further argues that any burden placed on Defendants will be resolved by

---

[1] Plaintiff claims that Defendants have failed to cooperate in proposing custodians and search terms. [*See* Dkt. 60 at p. 5.] However, this is simply not true. Defendants have met-and-conferred many times regarding these issues and have proposed both search terms and custodians. Contradictorily, Plaintiff admits this himself. [*See id.* at p. 4.] Furthermore, Plaintiff's contention that Defendants have forfeited their right to object to Plaintiff's proposal is without any legal authority.

5

their document collection software. Plaintiff then goes on the make various claims about the capabilities of Defendants' software without reference to any evidence of such capabilities. Shockingly, Plaintiff's counsel previously repeatedly indicated to the Court they were ignorant to Defendants' software capabilities. An overly broad protocol will no doubt result in broader discovery requests. Plaintiff's suggestion is a hidden attempt to expand the parameters of discovery in this case and should be disregarded by the Court.

I. PROPOSED SEARCH TERMS

Plaintiff's proposed search terms appear to be nothing more than a fishing expedition as they are overly vague and generic. As Plaintiff suggests, some of his proposed terms, because of their generic nature, will appear in emails that are "broadcast agency-wide, resulting in thousands of documents that are technically responsive but practically irrelevant." [Dkt .60 at p. 4.] Based on the preliminary search conducted by the IDOC Defendants, this admission by Plaintiff is actually greatly underestimated; Plaintiff's proposed terms will result in **hundreds of thousands** of documents. For example, terms such as "inpatient", "mental", and "solitary" are terms used on standard IDOC documents that will produce results that are wholly unrelated to Plaintiff and his claims. As argued by Wexford, Plaintiff all but admits these terms are overly broad and generic when he claims searching these terms is just the first step in the process of locating relevant emails.

Wexford is also correct that many of Plaintiff's proposed terms are duplicative. These include but are not limited to the terms "Rasho," and as well as "Stewart AND

6

Rasho," and "monitor AND Rasho." Clearly the search term "Rasho" will include all e-mails containing reference to the Rasho case, including those e-mails which also include reference to "Stewart" or "monitor." More duplicative search requests are found in numbers 15, 16, 17, and 18 which specify (respectively) that Defendants run searches for "solitary confinement" and "solitary" as well as "segregation" and "seg!". All e-mails which are included in the first search will also, by necessity, be included in the second. Unsurprisingly, Plaintiff had proffered no reasoning for these duplicative and wasteful search terms.

Plaintiff argues that his search terms are necessary to gather ESI related to Plaintiff's systemic allegations. Plaintiff is mistaken and his strategy to cast a wide net and then winnow down the results is inefficient and not proportional. Any relevant ESI that would go to Plaintiff's systemic claims would likely be included in the ESI related to Plaintiff' individually. Therefore, a search of the terms in Exhibit B.I. is more appropriate. Additionally, IDOC Defendants have advised Plaintiff that they will produce policies relevant to hiss claims. If, once these documents are produced, there are additional terms or custodians Plaintiff would like to discuss, the IDOC Defendants would be happy to confer. Indeed, the proposed ESI Protocol has a specific mechanism for such instances. [*See* Dkt. 56-2 at p. 5.]

II.   PROPOSED CUSTODIANS AND REPOSITORIES

To start, the IDOC Defendants object to Plaintiff's inclusion of the State of Illinois (labeled as a defendant) as a custodian or data repository. [*See* Dkt. 56-2 at Ex. A.II.] The Court dismissed the State of Illinois as a party on September 19, 2019.

[*See* Dkt. 44.] Plaintiff contends that this case is effectively brought against the State of Illinois because Plaintiff has sued the Director of IDOC in his official capacity. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 59, 109 S. Ct. 2304, 2306, 105 L. Ed. 2d 45 (1989) (suit against state officials in their official capacities is no different from a suit against the State itself). Plaintiff therefore believes that he is entitled to discovery from the Governor's office as well as the Department of Human Services ("DHS"). However, Plaintiff's claims involve alleged violations against **IDOC employees** during Plaintiff's incarceration at **IDOC facilities**. Plaintiff's position would essentially allow all state employees and state agencies to be subject to discovery in cases in which a plaintiff brings an official capacity claim. This drastic result would not be proportional in a majority of cases. Indeed, it is not proportional here. Plaintiff also fails to consider the fact that *if* DHS or the Governor's office were involved in any of Plaintiff's claims, that ESI would likely be encompassed in Defendants' proposal. For example, if the Director of IDOC had an email exchange with the Governor's office or DHS, these emails would be included in Defendants' proposed searches.

IDOC Defendants have proposed to search fourteen different custodians. This includes Defendants as well as five other high ranking administrators at IDOC. Those custodians IDOC Defendants object to will either be encompassed in Defendants' proposals as described above or are irrelevant to Plaintiff's claims. For instance, Plaintiff has offered no reason why Jason Garnett, the Chief of Parole is

8

relevant to Plaintiff's claims. The same can be said for the CFO for IDOC, or the Executive Director for the Capital Development Board; the list goes on and on.

Moreover, it is unclear why Plaintiff presumes many of the individuals on his list of custodians hold relevant information. Absent Defendants and former Governor Bruce Rauner, none of these individuals were included in Plaintiff's initial disclosures. Indeed, these individuals are not included in any of the parties' disclosures. Conversely, the IDOC Defendants have agreed to all those individuals listed on their disclosures being designated as custodians. Once more, Plaintiff position is puzzling.

## CONCLUSION

As noted by counsel for Wexford, Plaintiffs proposal to conduct discovery by gathering as much information as possible, and then narrowing that information to data which might, arguably, be related to Plaintiff's claim is inefficient, wasteful, and a disproportionate means to conduct discovery.

WHEREFORE, Defendants, John Baldwin, Jeff Sims, Shane Reister, Melvin Hinton, Sylvia Butler, and Jamie Chess respectfully requests the Court enter an Order consistent with their recommendation, deny Plaintiff's requests, and for such further relief that this Court deems just and equitable.

Dated: January 1, 2020

Respectfully Submitted,

9

| | | |
|---|---|---|
| KWAME RAOUL<br>Attorney General of Illinois | By: | */s/ Nicholas S. Staley*<br>NICHOLAS S. STALEY<br>Unit Supervisor, Prisoner Litigation<br>General Law Bureau<br>Office of the Illinois Attorney General<br>100 West Randolph Street, 13th Floor<br>Chicago, Illinois 60601<br>(312) 814-3953<br>nstaley@atg.state.il.us |

10

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on January 1, 2020, he electronically filed the foregoing document with the Clerk of the Court for the Central District of Illinois by using the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system.

                */s/ Nicholas S. Staley*
                NICHOLAS S. STALEY