044653/19344/JNR

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| ANTHONY GAY, <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF ILLINOIS, JOHN BALDWIN, JEFF SIMS, SHANE REISTER, DR. DOE 1, MELVIN HINTON, SYLVIA BUTLER, KELLY ANN RENZI, WILLIAM PUGA, DR. CHESS, DR. NUNEZ, WEXFORD HEALTH SOURCES, INC., and DOES 2-5, <br><br> Defendants. | Case Number  19-cv-01133 <br><br> Judge Colin Stirling Bruce |

**MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS**

NOW COMES the Defendants, WILLIAM PUGA and WEXFORD HEALTH SOURCES, INC., by and through their attorneys, CASSIDAY SCHADE LLP, and for its Memorandum of Law in Support of Partial Motion to Dismiss, states as follows:

**BACKGROUND**

On October 28, 2018, Plaintiff filed the above-captioned matter. Doc. 1. Plaintiff alleged violations of the Eighth Amendment, the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and the Fourteenth Amendment's due process clause. *Id.* at ¶¶ 1-5. Plaintiff asserted that he was improperly committed to solitary confinement during his over two-decades-long prison sentence and did not receive proper mental health treatment and reasonable accommodations for the mental health issues that allegedly resulted from the solitary confinement. *Id.* at pages 1-3.

Plaintiff generally alleged he suffers from borderline personality disorder the symptoms of which manifested after imprisonment but instead of treating him, the IDOC cited him for disciplinary violations, causing him to be held in solitary confinement for over 20 years. Doc. 1 at 2. Plaintiff claims the primary manifestation of his mental decompensation in solitary confinement was self-mutilation, and between 1998 and May 2018, he repeatedly cut his testicles, penis, neck, arms, legs, and groin. Doc. 82 at 11.

On February 22, 2019, co-defendants moved to dismiss Plaintiff's Complaint under Rule 12(b)(6). Doc. 37. Co-defendants argued, *inter alia,* all claims arising from Plaintiff's solitary confinement before October 28, 2016, were barred the statute of limitations. Doc 37 at 11. In Response to co-defendants' Motion to Dismiss claims outside the two-year statute of limitations (doc. 37), Plaintiff argued his claims against IDOC were saved by the "continuing violation" doctrine. Doc. 40. In denying co-defendants' Motion to Dismiss Court observed that "for about twenty years Plaintiff alleged Defendants denied him mental-health care that caused him physical and psychological harm." Doc. 44 at 12. The Court stated it was "satisfied that the continuing violation doctrine tolls Plaintiff's claims against Defendants." Doc. 44 at 12. Plaintiff was therefore allowed to bring claims for the length of his incarceration.

On March 7, 2020, Plaintiff filed his First Amended Complaint, reiterating his prior claims. Doc. 82. Plaintiff alleged Defendant Puga provided psychiatric care to Plaintiff from 2016 to 2018. Doc. 82 at 9. As to Defendant Wexford, Plaintiff alleged that during a number of years of Plaintiff's incarceration Wexford was under contract to provide medical care and mental healthcare to IDOC prisoners, including comprehensive and specialized mental health treatment, including specialty and emergency care. Doc. 82 at 7. Plaintiff claims "despite its contractual obligations *** by policy and practice Wexford did not provide onsite mental

health services necessary to meet the needs of persons with severe mental health illnesses like [Plaintiff], nor did it transfer prisoners who needed such care to appropriate outside mental health facilities." Doc. 82 at 8. Plaintiff further alleges Wexford "never developed such a hospitalization capacity within the IDOC's facilities, so this meant [Plaintiff required off-site hospitalization." Nonetheless, Plaintiff claims that "[o]n information and belief Wexford also had a policy and practice of ignoring its obligation to provide such off-site hospitalization for seriously mentally ill prisoners, and did not seek to transfer any prisoner [including Plaintiff] for the off-site mental healthcare that they needed." Doc. 82 at 18.

Defendants now move to dismiss claims for relief for events before October 28, 2016, as outside the two-year statute of limitations. Allowing Plaintiff to reach beyond the statutory limitations period 20-25 years does not serve the policies of the "continuing violation" doctrine of preventing a defendant from running out the clock on a violation of law or avoiding the burden of piecemeal litigation. Plaintiff has harassed Defendant Wexford and its employees in piecemeal fashion for years about events he now wishes to treat as "continuing." Instead the policy supporting statutes of limitation---notice, repose, and avoidance of stale claims---requires Plaintiff's claims be limited to October 28, 2016, to October 28, 2018. For the following reasons, Defendants' Motion must be granted.

## ARGUMENT

**A.     Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, the court thus accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

3

555-56 (2007) (citations omitted). Motions to Dismiss claims as time-barred are only appropriate in limited circumstances, as the statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c); Nevertheless, "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (if a litigant "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court.") (collecting cases).

Congress failed to specify a statute of limitations for civil rights claims under Section 1983. *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011). Federal courts in determining the statute of limitations for Section 1983 claims adopt the forum state's statute of limitations for personal injury claims. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). In Illinois, the statute of limitations for personal injury claims is two years. 735 ILCS 5/13-202 (West 2011). A Section 1983 claim in a United States District Court in Illinois must be filed within two years of the accrual of the claim. A claim accrues for statute of limitations purposes when a plaintiff knows of the fact and cause of an injury. *Amin Ijbara Equity Corp*. v. *Village of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017).

**B.     Contours of "Continuing Violation" Doctrine**

Plaintiff filed the Complaint on October 28, 2018; therefore straightforward application of the statute of limitations would limit Plaintiff's recovery to events since October 28, 2016. However, based on the the briefing on co-defendants' Motion to Dismiss and the Court's Order denying co-defendants' Motion*,* the applicability of the federal common law doctrine of

4

"continuing violation" is a key issue. *Filipovic v. K & R Express Sys.*, Inc., 176 F.3d 390, 396 (7th Cir. 1999).

A violation is called "continuing," signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct. *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). In *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010), the Seventh Circuit described the "continuing violation" doctrine as follows:

> The doctrine applies when 'a tort involves a continued repeated injury' and 'the limitation period does not begin until the date of the last injury or when the tortious act ceased.' *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 442 (7th Cir. 2005). "The continuing violation doctrine allows a complainant to obtain relief for a time-barred act ... by linking it with acts that fall within the statutory limitations period." *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999). 'It is thus a doctrine not about a continuing, but about a cumulative, violation.' [*Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008)]. The continuing violation doctrine, however, does not apply to 'a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing.' *Rodrigue*, 406 F.3d at 443; *see also Filipovic*, 176 F.3d at 396 (actions 'so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together in a single chain, a single course of conduct, to defeat the statute of limitations').

The contours of the "continuing violation" doctrine were clarified in *Heard,* 253 F.3d 316, *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013), and by the United States Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, (2002), and *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). "Continuation" can affect a statute of limitations in three ways: (1) a "continuing violation" or ongoing violation as in *Heard* where a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period; (2) a cumulative impact of a series of acts not independently actionable as in *Turley* where a plaintiff also can reach back to its beginning even if that beginning lies outside

5

the statutory limitations period; or (3) a discrete act causing continuing injury as in *Morgan/Ledbetter* in which a plaintiff cannot reach back outside the statutory limitations period. *See Turley*, 729 F.3d at 651 (Easterbrook, J., concurring).

In *Heard,* 253 F.3d 316, the plaintiff filed an Eighth Amendment deliberate indifference suit against county jail officials after months of unsuccessfully demanding medical attention for a ruptured hernia. The district court identified the accrual date as when the plaintiff first discovered that he required medical attention, placing his claims outside the two-year statute of limitations. The Seventh Circuit reversed. Rather than requiring the plaintiff to file a series of piecemeal suits for each alleged denial of treatment, the court considered the entire period as "a continuous series of events giv[ing] rise to a cumulative injury," because "it would impose an unreasonable burden on the courts to entertain an indefinite number of suits and apportion damages among them." *Id.* at 320. Each new refusal by the officials "marked a fresh infliction of punishment that caused the statute of limitations to start running anew." *Id.* at 318.

In *Turley*, 729 F.3d 645, 651 (7th Cir. 2013), the plaintiff alleged frequent and improperly imposed prison lockdowns over a 33-month period, with the longest continuous lockdown extending 81 days. The Seventh Circuit observed that with each continuing day and period of lockdown, the plaintiff's injuries increased and that the statute of limitations ran from the last date of lockdown, or last day confined to the tiny cell. *Turley*, 729 F.3d at 651. The Court observed that the limitations period could be tolled under the cumulative approach to the continuing violation doctrine in which the cumulative impact of a series of actions becomes a violation of law, where each violation viewed separately does not. *Turley*, 729 F.3d at 651.

In *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, (2002), the Supreme Court overruled the Ninth Circuit's application of the continuing violation theory to discrete

discriminatory acts. It held that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. The Supreme Court held that a discrete act "occurred" on the day it "happened," and therefore the period for filing a charge began on the date of the act. *See Id.* at 110; *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) (effects of past discrimination do not restart clock for filing an EEOC charge). Put another way, where a discrete wrongful act causes a continuing harm, the plaintiff may not reach beyond the statute of limitations.

Here, the following list shows Plaintiff has sued Wexford and its medical and mental health professionals *at least* nine times about his mental health treatment and self-mutilation.[1] This reflects Plaintiff's unmistakable judgment his past mental health treatment was *not* a continuing wrong but was instead a series of discrete wrongful acts that were separately actionable. *See Filipovic v. K & R Sys., Inc.,* 176 F.3d 390, 396 (7th Cir. 1999) (harassment and name-calling over a thirteen year period do not constitute a continuing violation because any pattern was evident within the statutory period, thus it is reasonable to require the plaintiff to file suit then); *Morgan,* 536 U.S. 101. Plaintiff is the master of each Complaint and his prior determinations should be honored, as should the fact he repeatedly survived preliminary review under 28 U.S.C. §1915A. *See Mordi v. Zeigler*, 870 F.3d 703, 707 (7th Cir. 2017). In total, this list reflects Plaintiff's and the Courts' determinations his current stale allegations are akin to those in *Morgan* and *Ledbetter* and not *Heard* or *Turley. See Greenhill v. Vartanian*, 917 F.3d 984, 988 (7th Cir. 2019) (discrete event with continuing consequences cannot be "continuing").

---

[1] *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (recognizing that Court may take judicial notice of public records on a 12(b)(6) Motion without converting motion to one for summary judgment).

7

1. *Gay v. Chandra,* SDIL 5-150

On March 1, 2005, Plaintiff sued his psychiatrist at Tamms, a Wexford employee, alleging deliberate indifference to a serious mental health need in violation of the Eighth Amendment. Specifically, Plaintiff alleged, among other things, since transferring to Tamms in January 2004, he mutilated his arm, leg, and penis at least 35 times. Group Exhibit A, Complaint at 4. Plaintiff claimed when he did not mutilate himself he suffered anxiety attacks but that Dr. Chandra would not medicate him, putting Plaintiff at extreme risk for suicide. *Id.,* Complaint at 5. The Court found Plaintiff had stated claims for violations of the Eighth Amendment based on these allegations. Plaintiff was appointed counsel and a jury found in the defendant's favor on all Counts. *Id.*

2. *Gay v. Kwasniewski,* SDIL 08-59

In 2007, Plaintiff sued a Wexford social worker at Tamms in Alexander County, Illinois, alleging she was deliberately indifferent to his serious mental health needs in violation of the Eighth Amendment. Group Exhibit B. Specifically, Plaintiff claimed he had "self-mutilated himself over one hundred times since 1-29-04." The defendant removed the case to the Southern District of Illinois. On March 6, 2009, the Court granted summary judgment to Defendant Kwasniewski on Plaintiff's claim the defendant unconstitutionally removed him from suicide watch. In its summary judgment order, the Court observed Plaintiff's deposition transcript reflected Plaintiff claimed he did not engage in cutting before coming to prison and that his original sentence was seven years but because of numerous staff assaults he amassed additional sentencing totals. Apparently Plaintiff testified that he became infatuated with a psychologist at Tamms and would cut himself to get her attention.

3. *Gay v. Rhodes,* SDIL 08-277

On April 14, 2008, Plaintiff and several other Tamms inmates sued proposing to represent a class of mentally ill inmates. They alleged the mental health care at Tamms did not meet constitutional standards and that mentally ill inmates were discriminated against. Group Exhibit C. They alleged the conditions at Tamms and effects of social isolation exacerbated mental illness. Plaintiff Gay specifically claimed he "has mutilated his arm, leg, neck and penis at least thirty-five times or more" and that he has "self-mutilation" disorder. He further alleged he was refused anti-anxiety medication. Approximately a year after the case was filed, Plaintiff opted out, claiming he had not seen the Complaint.

4. *Gay v. Chandra,* **SDIL 08-523**

On April 30, 2008, Plaintiff sued Dr. Chandra, his psychiatrist at Tamms, and numerous Tamms employees in Alexander County, Illinois, in case 08-MR-31. Group Exhibit D. Plaintiff alleged deliberate indifference to his serious mental health needs due to Dr. Chandra discontinuing certain medications. Plaintiff claimed he suffered from mood disorder, depression, and anxiety and anxiety attacks in which he cuts himself but that he was not receiving therapy. Plaintiff claimed when he cut himself he would receive an inmate disciplinary report for improper disposal of a bodily fluid that would cause him to be placed on controlled feeding status. Plaintiff also claimed Defendants Katchigan and Clover, a psychiatrist and social worker at Tamms, respectively, refused him mental health care due to his self-mutilation. Counts VI and VII alleged violations of the Americans with Disabilities Act and Rehabilitation Act against the State based on denial of mental health treatment. Group Exhibit D, Complaint at 7. Defendants removed the case to the Southern District of Illinois but it was remanded back to Alexander County.

5. *Gay v. Clover,* **SDIL 09-925**

9

On November 30, 2009, Plaintiff sued Wexford and several of its employees at Tamms, alleging deliberate indifference to his serious mental health needs. Group Exhibit E. Plaintiff claimed he had self-mutilated hundreds of times since January 29, 2004, and was at risk of suicide. In the Complaint, Plaintiff listed numerous instances of self-mutilation in 2007 and 2008. Plaintiff sued Wexford for not having a mental health provider on call for after-hours mental health issues. On September 13, 2010, Plaintiff moved for a temporary restraining order and preliminary injunction, detailing self-mutilation he performed between February and August 2010. He claimed he suffered from "mental health problems that causes plaintiff to self-mutilate himself [and he is] not afforded medication or therapy and receives substandard medical treatment." Group Exhibit E, Doc. 15 at 3. Plaintiff sought an order he be assessed for his needs by an independent medical doctor and psychiatrist. *Id.* at 4.

On August 25, 2011, the Court conducted an evidentiary hearing on Plaintiff's motion for preliminary injunction and the defendants' motion to revoke Plaintiff's *in forma pauperis* status (IFP) because he had accumulated three or more strikes under 28 U.S.C. §1915(g) and was not at "imminent risk of serious physical injury." Plaintiff was represented by counsel. At the hearing Plaintiff testified he was receiving no medication, no individual therapy sessions, and no group therapy and had been in isolation for seven years. Group Exhibit E, transcript of evidentiary hearing, pg. 17-18. Plaintiff claimed the lack of human interaction in segregation caused him to cut himself. *Id.* at 18. Following the evidence, the Court denied Plaintiff's TRO, making these factual findings:

> The Court's going to find that, first of all, Mr. Gay does have problems. There's no question he has some issues in his mind that he needs to address as well, as best as possible, the people at Tamms need to address. But the Court is going find that his actions of cutting himself appear to be planned and not impulsive and for the purpose of achieving the secondary gains that I heard so much testified about.

10

> I think his cutting himself is intentional and on a voluntary basis he controls the timing of it. And you know what? It didn't slip me. It didn't slip past me. And because of the---even Mr. Gay testified, as well as some of the defendants, and the psychiatrist says that Mr. Gay appears to bargain with guards in order to get things that he wants. I found almost unbelievable.
>
> Because when I asked him, I said where did you get the metal to cut yourself? He said from a guard. And why would a guard give him something, a metal, knowing his history of cutting himself unless there was some bargaining going on? May not have been the guard that, on the shift that gave him the metal that he ended up cutting himself, but, obviously, Mr. Gay has been around a long time in the system. Been at Tamms and has been cutting himself for over ten years. He knows what he's doing.
>
> The Tamms, they have quarterly meetings to discuss Gay's mental health issues. He continues to receive psychiatric treatment and medical care. He's gotten medical care. When he has cut himself, he's gotten medical care. He receives medical attention when he does cut himself.
>
> Someone meets with him on a weekly basis, and if he doesn't want to talk to them when they do their rounds, that's his decision. And the fact that he intentionally refuses the written mental health therapy which, according to the testimony, is just the beginning. If he wants to try to help himself, he needs to take a little responsibility for himself. *** Mr. Gay, you're going to have to cooperate. I think you can quit cutting if you want to. But, you know, I think there's enough medical attention that you're getting at Tamms to help you.
>
> I will make this recommendation to you, Mr. Powers, that you might want to put him on Buspar and see what that does for a while. It wouldn't hurt. So the Court's going to deny the TRO-preliminary injunction. I agree with Judge Murphy's assessment that there's nobody at Tamms is putting him in imminent danger of physical harm. Mr. Gay, you're doing that yourself. So the Court is going to revoke the IFP status. So that will be the findings and ruling of this Court. *Id.* at 137-41.

After Plaintiff failed to pay the filing fee, the Court dismissed the case. *Id.* at Doc. 61.

**6.** *Gay v. Chandra,* **SDIL 10-336.**

After 08-MR-31 *supra* was remanded to Alexander County in SDIL No. 08-523, it appears to have been re-removed on May 4, 2010, becoming SDIL No. 10-336. Group Exhibit F. Plaintiff alleged deliberate indifference to his serious mental health needs against Dr. Chandra. Plaintiff was appointed counsel, who filed an Amended Complaint against Dr. Chandra, alleging First Amendment retaliation and intentional infliction of emotional distress based on Chandra's medication decisions. In the Amended Complaint, Plaintiff alleged he

11

suffers from anxiety and depression and "is "isolated in an extraordinarily restricted environment," which exacerbates his mental health conditions "resulting in repeated suicide attempts and self-mutilation of a severity that treatment in an area hospital has been required." *Id.,* at Doc. 77, pg. 2. According to the docket, this case was settled for an undisclosed amount in September 2015. *Id.,* at docket entry of September 22, 2015.

### 7. *Gay v. Blackman*, SDIL 11-14

On January 7, 2011, Plaintiff sued a Wexford social worker and psychiatrist at Tamms alleging deliberate indifference to his serious mental health needs and intentional infliction of emotional distress. Group Exhibit G. Plaintiff claimed the defendants' failure to recommend mental health treatment led him to self-mutilate. The district court appointed counsel to address Plaintiff's allegation he could proceed under the Prison Litigation Reform Act's exception to the "three strikes" bar from proceeding as a poor person due to facing imminent risk of serious physical injury. *See* 28 U.S.C. §1915(g). The memorandum of law in support of Plaintiff's application to proceed IFP alleged Plaintiff "suffers from several misdiagnosed and untreated mental illnesses which cause him to severely and repeatedly cut himself." Plaintiff further alleged "his condition is exacerbated by his almost constant solitary confinement and the lack of medication, therapy, or other services to assist him in managing his mental illness in conditions purposefully designed to crush his spirit and weaken his resistance." *Id.* at doc. 69 at 1. To this Motion, Plaintiff's counsel attached an article from the New Yorker called "The United States holds tens of thousands of inmates in solitary confinement. Is this torture?"

Following an evidentiary hearing in which Plaintiff was represented by counsel and supported by the testimony of a retained expert witness, the Court denied Plaintiff leave to proceed IFP. In its Order of October 3, 2012, the Court made factual findings, including that

12

"the sole reason Plaintiff began cutting himself is for the purpose of receiving care and compassion from prison staff" and that Plaintiff's "course of conduct is one chosen by Plaintiff and he could stop cutting himself if he so chose." *Id.* at doc. 80 at 4-5.

### 8. *Gay v. Powers,* SDIL 11-20

On January 7, 2011, Plaintiff sued the Wexford medical director at Tamms, alleging deliberate indifference to his serious medical needs regarding self-inflicted injuries to his Plaintiff's scrotum in August and September 2010. Group Exhibit H. Plaintiff again sought to proceed under the §1915(g) exception for imminent danger based on the allegation he faced imminent danger from self-inflicted cutting. On February 2, 2012, the district court conducted an evidentiary hearing on Plaintiff's allegations of imminent danger. The district court concluded that "at most is that Gay has suffered a past self-inflicted injury that presents no imminent danger of serious physical injury to him." *Id.* at doc. 57 at 7.

On September 18, 2012, the district court entered an order noting Plaintiff had filed 34 lawsuits in the United States District Courts in Illinois and owed at least $1,750 in unpaid filing fees. The Court barred Plaintiff from filing any new papers in the Southern District until he paid the Clerk of Court $1,750 in unpaid filing fees. *Id.* at doc. 76.

### 9. *Gay v. Mathews,* CDIL 12-1517

On December 18, 2012, Plaintiff sued his psychiatrist and several other Wexford mental health employees at Pontiac. Exhibit I. Plaintiff alleged deliberate indifference to his serious mental health needs, claiming he had mutilated himself hundreds of times, including 27 times between October 6, 2011, and November 12, 2012, and that when he goes without engaging in self-harm he becomes anxious and agitated. *Id.,* Doc. 1, 3. He claimed despite his self-harm he did "not receive medication and/or therapy to help alleviate his anxiety and/or poor impulse

13

control" and that the defendants knew of his requests for mental health intervention but intentionally ignored him *Id.* Plaintiff also alleged a due process violation, claiming he "had been locked in a cell 24 hours a day for 14 years," which contributed to his anxiety. *Id.* at 4-5. The Court found Plaintiff had stated claims for deliberate indifference to his serious medical needs and a due process claim based on refusal to release Plaintiff from restraints. *Id.,* at doc. 7 at 2-3. On August 21, 2013, Plaintiff voluntarily dismissed this case after Defendants moved to revoke his IFP.

C.  The Purposes of the "Continuing Violation" Doctrine Are Not Served By Its Application to Plaintiff

The "continuing violation" doctrine serves two primary purposes. The first is "ensuring that illegal conduct is punished by preventing a defendant from invoking the earliest manifestation of its wrongdoing as a means of running out the limitations clock on a course of misconduct that persisted over time; the doctrine serves that end by treating the defendant's misconduct as a continuing wrong and deeming an action timely so long as the last act evidencing a defendant's violation falls within the limitations period." *United States v. Spectrum Brands, Inc*., 924 F.3d 337, 350 (7th Cir. 2019). The second is avoidance of piecemeal suits and the "unreasonable burden on the courts to entertain an indefinite number of suits and apportion damages among them." *Heard,* 253 F.3d at 320.

The "continuing violation" doctrine's purposes of preventing Defendants from "running out the limitations clock" and avoiding the burden of piecemeal litigation are not served by applying it to Plaintiff. Plaintiff has sued Wexford and its employees for years over his mental health and self-mutilation. Plaintiff sues Defendant Wexford alleging an unconstitutional policy under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-92 (1978). The gravaman of Plaintiff's *Monell* claim is that prisoners, including Plaintiff, required inpatient

14

hospitalization for mental health issues and Defendant did not develop necessary hospitalization capacity within the IDOC's facilities and did not transfer prisoners who needed such care to appropriate outside mental health facilities. Doc. 82 at 8. Plaintiff claims he suffered mental and physical injuries, including repeated acts of self-mutilation. Doc. 82 at 19-20. This *Monell* claim is merely a re-packaging of well-trodden ground into a different legal theory.

As is demonstrated below, far from "running out the limitations clock," Wexford has expended significant resources defending Plaintiff's cases over the years. Plaintiff has already "piecemealed" claims about his mental health and self-mutilation. In light of the above litigation history, service to the policy considerations supporting the "continuing violation" doctrine is absent. Further, Plaintiff is vague as to the timeframe of his claim against Defendant Puga. It should be similarly limited.

**D.     The Policies Supporting Statutes of Limitation Are Served By Limiting Plaintiff's Claims to Two Years**

While the policy considerations supporting the "continuing violation" doctrine are absent, those supporting the statute of limitations are compelling and served by limiting Plaintiff's claims to October 2016 to October 2018. Statutes of limitations serve the following purposes: (1) ensuring a defendant is on notice a plaintiff is suing him within a reasonable time after an event; (2) the defendants' interest in repose; and (3) the court's interest in avoiding hearing cases with stale evidence. *See United States v Kubrick*, 444 US 111, 117 (1979). In *Kubrick*, the Supreme Court stated:

> Statutes of limitations . . . represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." . . . These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of

15

evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*See also Boards of Managers of Dunbar Lakes Condominiums, etc. v. Dunbar Homes, Inc.*, 1991 U.S. Dist. LEXIS 1611, *30 (N.D. Ill.); *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944); *Lawyers Title Ins. Corp. v. Dearborn Title Corp., supra*, 118 F.3d 1157, 1166 (7th Cir. 1997); *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 877 (7th Cir. 1997); *Stephan v. Goldinger*, 325 F.3d 874, 876 (7th Cir. 2003).

Here, Plaintiff seeks to extend the limitations period against Wexford on the order of 20-25 years and subject it to expensive and onerous discovery for this entire period. In fact, Plaintiff is currently seeking discovery from Wexford for the entire period, including sensitive financial information. Wexford notes a review of federal court dockets shows that Plaintiff's counsel, Loevy & Loevy, has sued Wexford approximately 40 times since 2009. *See* Exhibit J. Giving a law firm whose business model is substantially based on harassing Wexford a blank check to conduct discovery for 20-25 years of Wexford's business practices is abusive and inconsistent with the compelling purposes of statutes of limitation.

## CONCLUSION

In *Morgan,* 536 U.S. at 113, the Supreme Court said that equitable tolling doctrines should be used "sparingly." The "continuing violation's" application to this situation is not sparing. A broader application is difficult to fathom. Plaintiff is a harassing and vexatious litigant, burdening the Courts and Defendant with litigation for two decades. It is too late to avoid the burden of his piecemeal litigation. But allowing Plaintiff to shoehorn expired and distinct claims undermines the purpose of the statute of limitations and gives Plaintiff's lawyers

16

an expansive tool to further harass Defendants. Claims should be limited to October 28, 2016, to present.

WHEREFORE, for the above reasons Defendants respectfully request this Honorable Court grant its Motion to Dismiss or such further relief as deemed appropriate.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ Joseph N. Rupcich
Attorneys for Defendants, WILLIAM PUGA
and WEXFORD HEALTH SOURCES, INC.

Joseph N. Rupcich
ARDC No. 6283899
CASSIDAY SCHADE LLP
111 North Sixth Street, 2nd Floor
Springfield, IL 62701
(217) 572-1714
(217) 572-1613 (Fax)
jrupcich@cassiday.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 23, 2020, I electronically filed the foregoing Memorandum of Law in Support of Partial Motion to Dismiss with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

Nicholas S. Staley, Esq.
Thor Inouye, Esq.
Alan Remy Taborga, Esq.
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago IL 60601

Stetson F. Atwood, Esq.
Laura Ieremia, Esq.
Donohue Brown Mathewson & Smyth, LLC
140 S. Dearborn Street. Suite 800
Chicago, IL 60603

Antonio M. Romanucci, Esq.
Nicolette A. Ward, Esq.
Romanucci & Blandin, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654

Maggie E. Filler, Esq.
Roderick and Solange MacArthur Justice Center
745 Atlantic Avenue, 8th Floor
Boston, MA 02111

Daniel M. Greenfield, Esq.
MacArthur Justice Center Northwestern Pritzker School of Law
375 E. Chicago Avenue
Chicago, IL 60611

Stephen H. Weil, Esq.
Sarah Grady
Jon Loevy
Arthur Loevy
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago IL 60607

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein are true and correct:

/s/ Joseph N. Rupcich

9451708 JRUPCICH;JRUPCICH